IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| VICTOR E. SCHMITT, on behalf of themselves and all others similarly situated; and CHERYL SCHMITT, on behalf of themselves and all others similarly situated;<br><br>Plaintiffs,<br><br>vs.<br><br>RAUSCH, STURM, ISRAEL, ENERSON & HORNIK, LLP, GREGORY W. ENERSON, JULIE A. RAUSCH, PAUL THIELHELM, and DISCOVER BANK,<br><br>Defendants. | **8:21CV11**<br><br>**MEMORANDUM AND ORDER** |

This matter is before the undersigned magistrate judge on Defendant Discover Bank's motion to compel arbitration. (Filing No. 37). Defendants Rausch, Sturm, Israel, Enerson & Hornik, LLP, Gregory W. Enerson, Julie A. Rausch, and Paul Thielhelm join Discover's motion (collectively, "RS Defendants"). (Filing No. 42). Discover seeks to enforce the arbitration provisions contained in cardmember agreements for Plaintiffs' credit card accounts. The RS Defendants join that motion. Plaintiffs oppose the motion to arbitrate. For the reasons stated below, Defendants' motion to compel arbitration will be granted.

BACKGROUND

Plaintiffs Cheryl Schmitt and Victor Schmitt (collectively, "Plaintiffs") are Nebraska residents who were previously sued by Defendant Discover Bank ("Discover") in Nebraska state court. Discover is a credit card company. Rausch,

Sturm, Israel, Enerson & Hornik, LLP is a debt collector and law firm, and the individual defendants are attorneys within that firm. The law firm and attorneys acted on behalf of Discover to recover alleged credit card debts from the plaintiffs in a state court action.

Bringing this action on behalf of not only themselves but also the putative class of all others similarly situated, Plaintiffs' first claim alleges the RS Defendants violated the Fair Debt Collections Practices Act ("FDCPA") 15 U.S.C. § 1692 by communicating directly with consumers who were known to be represented by an attorney, and by adding interest to lawsuits after the alleged accounts were "charged off" with interest waived. (Filing No. 16 at CM/ECF pp. 17-18). Plaintiffs' second claim alleges violations of the Nebraska Consumer Protection Act ("NCPA") (Neb. Rev. Stat. § 59-1601 *et seq.*), against both Discover and the RS Defendants. Plaintiffs allege the Defendants committed unfair or deceptive acts or practices in violation of the NCPA by filing county court debt collection complaints, sending letters, and seeking and adding unauthorized interest after the alleged accounts were charged off.

Discover argues Plaintiffs' claims are subject to arbitration under the terms in Plaintiffs' respective Cardmember Agreements. In support of its motion, Discover submitted the declaration of Janusz Wantuch[1], the Director of Credit Risk

---

[1] Plaintiffs challenge Wantuch's affidavit because he does not work for Discover Bank and there is "no explanation of a relationship between [DPI], Discover Bank and Discover Card." (Filing No. 43 at CM/ECF p. 12). The first page of Wantuch's affidavit states that DPI is a "wholly owned subsidiary of Discover Bank" and that Wantuch is a custodian of the books, records, and files of Discover as they pertain to Plaintiffs' accounts. (Filing No. 39-1 at CM/ECF pp. 2-3). Plaintiffs' argument is without merit. Their foundation objection is overruled and the cardmember agreements and associated letters are received. See, e.g., Gartly v. Selip & Stylianou LLP, No. 118CV1806ARRVMS, 2018 WL 5777033, at *3 (E.D.N.Y. Nov. 2, 2018) (holding foundation existed for admitting Discover credit records where "an employee of DPI, a wholly-owned subsidiary and servicing affiliate of credit card accounts owned by Discover Bank" declared she is "a custodian of records for Discover" and attested to the foundational requirements of Rule 803(6)).

Management for Discover Products Inc. ([Filing No. 39-1 at CM/ECF pp 2-4](#)). Wantuch attested to the contents of each Plaintiff's Cardmember Agreement.

Plaintiff Cheryl Schmitt's ("Cheryl") original Cardmember Agreement did not contain an arbitration agreement. ([Filing No. 39-1 at CM/ECF p. 3](#)) However, the agreement contained a change of terms clause:

> CHANGE OF TERMS: We may change any term or part of this Agreement … by sending notice at least 30 days before the change is to become effective. . . If you do not agree to the change, you must notify us in writing within 30 days after the mailing of the notice of change at the address provided in the notice of change. In which case your Account will be closed and you must pay us the balance that you owe us under the existing terms of the unchanged Agreement. Otherwise you will have agreed to the changes in the notice. Use of the Card after the effective date of the change shall be deemed acceptance of the new terms as of such effective date, even if you previously notified us that you did not agree to the change.

([Filing No. 39-1 at CM/ECF p. 9](#)).

Discover changed the terms of Cheryl's Cardmember Agreement effective April 2003. Before the April 2003 agreement became effective, Discover mailed Cheryl a "Notice of Right to Reject Arbitration" and Cheryl did not send Discover correspondence indicating that she rejected the arbitration clause. ([Filing No. 39-1 at CM/ECF pp. 3-4](#), 30).

Plaintiff Victor Schmitt ("Victor") applied for a credit card account with Discover. In January 2005, Discover sent Victor his new card and a copy of the Cardmember Agreement, dated March 8, 2004.

In both the 2003 and 2004 agreements, the first paragraph under the heading "IMPORTANT INFORMATION ABOUT YOUR ACCOUNT" states "You

3

have the right to reject the arbitration provision with respect to your new account within 30 days after receiving your Card . . ." (Filing No. 39-1 at CM/ECF pp. 15, 32). The first section of the Cardmember Agreement contains a boldfaced notice that "The Arbitration of Disputes Section on page 12 includes a waiver of a number of rights, including the right to a jury trial." (Filing No. 39-1 at CM/ECF pp. 16, 33). The Arbitration of Disputes section on page 12 contains notice that if arbitration is elected by either party, there will be no right for either party to litigate in court or to have a jury trial, and no right to join or consolidate claims by or against cardmembers, or to arbitrate any claims as a representative or member of a class. (Filing No. 39-1 at CM/ECF pp. 22, 36).

In 2018, Discover amended the Cardmember Agreement. The "Acceptance of Agreement" paragraph states "You accept this Agreement if you do not cancel your Account within 30 days after receiving a Card. You also accept this Agreement if you or an Authorized User use the Account. You may, however reject the 'Arbitration of Disputes' section as explained in that section." (Filing No. 39-1 at CM/ECF p.42). Wantuch's affidavit states that each Plaintiff accepted the Cardmember Agreement through the use of the card, and that Discover did not receive notice that either plaintiff rejected the Arbitration of Disputes clause within the cardmember agreement.  (Filing No. 39-1 at CM/ECF pp. 3-4).

The arbitration clauses in the 2003, 2004 and 2018 Cardmember Agreements allows for arbitration of any claim "arising from or relating to" Plaintiffs' accounts, if either party chooses to resolve the claim by binding arbitration instead of in court. (Filing No. 39-1 at CM/ECF pp. 22, 36, 44). Plaintiffs challenge the validity of the agreement for a number of reasons. First, they assert the agreement is both procedurally and substantively unconscionable, and that enforcement of the arbitration clause would cause logistical problems. They also assert Plaintiffs' claims are outside of the scope of the arbitration agreement, and that all

Defendants have waived arbitration by filing lawsuits in county court and/or affirmatively participating in this case.

## ANALYSIS

Arbitration is favored and this court's role is to engage in a limited inquiry to "determine whether there is a valid agreement to arbitrate and whether the specific dispute at issue falls within the substantive scope of that agreement." Larry's United Super, Inc. v. Werries, 253 F.3d 1083, 1085 (8th Cir. 2001). If the court so finds, Section 3 of the Federal Arbitration Act requires a stay of proceedings subject to an arbitration agreement, and Section 4 empowers the court to compel the parties to proceed with arbitration. 9 U.S.C. §§ 3, 4. "The party resisting arbitration bears the burden of demonstrating the motion to compel arbitration should be denied." Green Tree Financial Corp. -Alabama v. Randolph, 531 U.S. 79, 91 (2000).

"[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which [it] has not agreed so to submit." AT & T Technologies v. Communications Workers of Am., 475 U.S. 643, 648 (1986); Volt Information Sciences v. Board of Trustees, 489 U.S. 468, 479 (1989) (stating Arbitration is "a matter of consent, not coercion," and if the parties have not "agreed to arbitrate, the courts have no authority to mandate that they do so."); see also Churchill Environmental and Indus. Equity Partners, L.P. v Ernst & Young, L.L.P., 643 N.W.2d 333, 336 (Minn. Ct. App. 2002) (citing AgGrow Oils, L.L.C. v. Nat'l Union Fire Ins. Co. of Pittsburg, PA, 242 F.3d 780, 782 (8th Cir. 2001)). When deciding whether to compel arbitration, a two-part test is applied. United Steelworkers of Am., AFL-CIO-CLC v. Duluth Clinic, Ltd., 413 F.3d 786, 787 (8th Cir. 2005). The court must first decide whether a valid agreement to arbitrate exists. First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 943 (1995). If so,

the court must then determine if the parties' dispute falls within the scope of the arbitration agreement. AT & T Technologies, 475 U.S. at 649.

Under the Federal Arbitration Act, a written arbitration agreement "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2; Cicle v. Chase Bank USA, 583 F.3d 549, 553 (8th Cir. 2009). Under Section 2, an arbitration clause may be deemed unenforceable if upon application of state law, a court concludes a party was unfairly pressured to agree to a contract with an unwanted arbitration provision. Id. citing Allied-Bruce Terminix Cos. v. Dobson, 513 U.S. 265 at 281 (1995). The Federal Arbitration Act, as a matter of federal law, requires that any doubts concerning the scope of arbitrable issues be resolved in favor of arbitration. Moses H. Cone Memorial Hosp. v. Mercury Const. Corp., 460 U.S. 1, 24-25 (1983); Teamsters Local Union No. 688, 186 F.3d at 881 ("[W]hen an arbitration clause exists in a contract, there is a presumption of arbitrability unless it is clear that the arbitration clause is not susceptible of an interpretation that covers the dispute.").

I.    Valid and Enforceable Arbitration Clause

The initial question is whether a valid agreement to arbitrate exists between Plaintiffs and Discover and between Plaintiffs and the RS Defendants, and whether the claims raised in Plaintiffs' complaint fall within the scope of that agreement. Madol v. Dan Nelson Auto. Grp., 372 F.3d 997, 1000 (8th Cir. 2004). In this case, Discover is a signatory to its credit agreement/contract with Plaintiffs; the RS Defendants did not sign the contract. So, their respective rights to demand arbitration will be separately discussed.[2]

---

[2] The court notes that the initial and updated versions of the Cardmember Agreement between Plaintiffs and Discover contain "Governing Law" provisions which provide that the Agreements were governed by applicable federal law and by Delaware law. (Filing No. 39-1 at CM/ECF pp. 9, 23, 37, 44). In footnote 1 of

A.    Discover

Plaintiffs argue that any arbitration clause within their respective Cardmember Agreements is unconscionable because the provisions requiring arbitration are "buried in the fine print of a piece of 'junk mail' they do not recall seeing." (Filing No. 43 at CM/ECF p. 27; Filing No. 44-1 at CM/ECF p. 2; Filing No. 44-2 at CM/ECF p. 2). "When considering whether an agreement is unconscionable, . . . the term 'unconscionable' means manifestly unfair or inequitable." N. Am. Specialty Ins. Co. v. Carson Stone & Supply, LLC, 489 F. Supp. 3d 917, 923 (D. Neb. 2020) (quoting Myers v. Neb. Inv. Council, 272 Neb. 669, 692, 724 N.W.2d 776, 799 (2006); see Ketler v. PFPA, LLC, 132 A.3d 746, 748 (Del. 2016) ("[T]here must be an absence of meaningful choice and contract terms unreasonably favorable to one of the parties.").

There are both procedural and substantive aspects to unconscionability. Procedural unconscionability relates to the formalities of making an agreement and encompasses, for instance, fine print clauses, high pressure sales tactics or unequal bargaining positions. Substantive unconscionability refers to undue harshness in the contract terms. Cicle v. Chase Bank USA, 583 F.3d at 554 (applying Missouri law); see also Adams v. Am. Cyanamid Co., 1 Neb. App. 337, 356, 498 N.W.2d 577, 590 (1992) ("Substantive unconscionability involves those cases where a clause or term in the contract is alleged to be one-sided or overly harsh, while procedural unconscionability relates to impropriety during the process of forming a contract."); James v. Nat'l Fin., LLC, 132 A.3d 799, 814–15 (Del. Ch. 2016) ("The concept of substantive unconscionability tests the substance of the

---

Discover's brief, (Filing No. 38 at CM/ECF p. 8), it asserts that the contract with the arbitration agreement was formed under Delaware law. However, both parties relied on Nebraska law in their respective briefs. The court need not decide whether Nebraska or Delaware law applies to the issue of whether the arbitration agreement is valid and enforceable because under either states' law, the result is the same.

exchange. . . . The concept of procedural unconscionability examines the procedures that led to the contract" and evaluates whether seemingly lopsided terms nonetheless resulted from arms'-length bargaining."). Plaintiffs argue the arbitration provisions in the Discovery Cardmember Agreements are unconscionable on both grounds.

a)      Procedural Unconscionability

An essential fact in determining procedural unconscionability is the disparity in respective bargaining positions of parties to a contract. Myers, 724 N.W.2d at 799; Graham v. State Farm Mut. Auto. Ins. Co., 565 A.2d 908, 912 (Del. 1989). "Unconscionability is determined in light of all the surrounding circumstances, including (1) the manner in which the parties entered into the contract, (2) whether the parties had a reasonable opportunity to understand the terms of the contract, and (3) whether the important terms were hidden in a maze of fine print." Henggeler v. Brumbaugh & Quandahl, P.C., LLO, 894 F. Supp. 2d 1180, 1187 (D. Neb. 2012)[3] (citing Parizek v. Roncalli Catholic High Sch., 11 Neb.App. 482, 655 N.W.2d 404, 408 (2002)); see also James v. Nat'l Fin., LLC, 132 A.3d 799, 814 (Del. Ch. 2016) (stating that determining whether a contract is unconscionable turns on the totality of the circumstances and is made in light of its setting, purpose and effect).

---

[3] Plaintiff cites Henggeler in arguing that this court has considered, and denied, similar motions to compel. Henggeler is distinguishable from this case in at least two aspects: (1) In Henggeler, the credit card company that was party to the arbitration agreement was not a party to the lawsuit, rather the motion to compel arbitration was filed by a "debt buyer" who had not shown that it owned a valid debt; and (2) Henggeler provided unrefuted evidence that she did not live at the address where the statements were sent and that she did not receive the statements. But here, there is no showing that the agreements were not received. Instead, Plaintiffs in this lawsuit claim the arbitration terms are not enforceable because they did not read them. This argument is unconvincing. See In re Claims Against Pierce Elevator, 291 Neb. 798, 826, 868 N.W.2d 781, 802 (2015) (holding parties cannot "avoid their contracts on the grounds that they did not understand or read the contracts' terms or assumed the contracts said something different from their terms."); Graham v. State Farm Mut. Auto. Ins. Co., 565 A.2d 908, 913 (Del. 1989) ("A party to a contract cannot silently accept its benefits and then object to its perceived disadvantages, nor can a party's failure to read a contract justify its avoidance.")

The factors which this court has considered in determining whether a contract is unconscionable due to an imbalance of the parties' respective bargaining positions include (1) availability of other providers; (2) the ability to review and inquire about the terms of the agreement; and (3) the length, location, and complexity of the disputed terms. See N. Am. Specialty, 489 F.Supp.3d at 924. "[A]dhesion contracts are not automatically unconscionable or void." E.E.O.C. v. Woodmen of World Life Ins. Soc., 479 F.3d 561, 566 (8th Cir. 2007) (citing Kosmicki v. Nebraska, 264 Neb. 887, 652 N.W.2d 883, 893 (Neb.2002)); Graham v. State Farm Mut. Auto. Ins. Co., 565 A.2d 908, 912 (Del. 1989) (holding the adhesive nature of a contract does not automatically allow the non-drafting party to later reject unappealing contract terms as unconscionable).

The parties agree that Cheryl's original Cardmember Agreement did not contain an arbitration agreement.[4] Nonetheless, Discover has produced a 2002 Notice of Right to Reject Arbitration and a 2003 Cardmember Agreement as to Cheryl, a 2004 Cardmember Agreement as to Victor, and a 2018 Cardmember Agreement as to both Plaintiffs which all contain arbitration provisions. Each of these documents contain a notice to cardmembers explaining their right to reject the arbitration clauses contained in the agreement.

As to Cheryl, the Notice of Right to Reject Arbitration is dated November 2002 and allowed the cardmember to reject the changes on or before April 1, 2003. Cheryl had ample opportunity to opt out of the amendment before the 2003

---

[4] Plaintiffs note that as to Cheryl, Discover has produced two different cardmember agreements which are purportedly her original Cardmember Agreement. (An agreement dated May 1994 was allegedly produced in the county court collections action, whereas an agreement with a revised date of July 1993 was produced in this action). Neither party claims that either of these agreements contain an arbitration agreement. Discover's motion to compel arbitration is based upon a more recent version of the Cardmember Agreement, rather than the contents of the original. Federal courts have upheld Delaware statute 5 Del. C. § 952(a), concluding that Delaware law authorizes banks to amend credit card agreements by adding arbitration provisions. Comrey v. Discover Fin. Servs., Inc., 806 F. Supp. 2d 778, 784 (M.D. Pa. 2011)

Agreement took effect. She continued to use the card, and by doing so, under the terms of the agreement, she affirmatively accepted the amendment, including the arbitration clause. As to Victor, the agreement to arbitrate and the class action waiver were always part of the agreement and were not "foisted upon an unwary consumer" after he began using his card. See Cicle v. Chase Bank USA, 583 F.3d at 554.

Plaintiffs do not dispute that they applied for, were approved to obtain, and accepted credit from Discover in the form of a credit card. (Filing No. 16, generally). However, they argue there is no indication of the dates of the credit card charges (i.e. the dates the debts in the underlying action accrued), asserting that "if the charges were incurred before any of the alleged arbitration clauses took effect, the clauses could not apply to those charges," (Filing No. 43 at CM/ECF p. 14), and as such, there is no proof of which arbitration clause, if any, governs the issues raised in this case.

While it is true there is no evidence of Plaintiffs' specific credit card charges, the record does contain a statement from Cheryl's account dated March 22, 2014—well after the effective date of the 2003 amended agreement—showing the account was still active. (Filing No. 44-8 at CM/ECF p. 15). Additionally, attached to the Amended Complaint are the "Attorney Referral Pending" letters sent to each Plaintiff regarding their respective Discover credit accounts. The letters, dated June 7, 2019, show the accounts were still open more than 30 days after the effective date of the 2018 Cardmember Agreement. (Filing No. 16-1. The Acceptance of Agreement provision states that the Agreement is accepted if the account is not canceled within 30 days after receiving a card. The evidence shows the accounts were still open and in use after the 2018 amendment. The date of the charges themselves is immaterial, as the revised agreement and the associated terms become effective automatically.

Plaintiffs argue that the arbitration agreement is procedurally unconscionable because there is no evidence that they were aware of or comprehended the arbitration clauses in their cardmember agreements and they had no opportunity to provide input on the terms. Plaintiffs contend that the use of preprinted forms and fine print supports their claim that they were unaware of the terms, and that they lacked of bargaining power compared to Defendants.

The terms of the agreement were in small print, but the arbitration provision was in the same size font as the rest of the agreement. In the 2003 and 2004 agreements, the cover of the agreement pamphlet and the first page of the agreement contain a notice of the right to reject arbitration and refer the reader to the appropriate section of the agreement. The arbitration clause and class action waiver were introduced by a boldfaced heading and a paragraph in all-uppercase font explaining the litigation rights that were being waived by acceptance and use of the card. See Cicle v. Chase Bank USA, 583 F.3d at 554. The 2018 agreement refers to arbitration in the first sentence on the first page of the agreement and the arbitration provision is set off with a heading printed in larger, capitalized and bolded font. Discover did not attempt to "bury" or hide the arbitration provision or to trap an unwary consumer into unfavorable terms.

It is undeniable that Discover has a superior bargaining position, and there is a lack of opportunity in the ordinary course for negotiation between the consumer and the bank in the application for a credit card. However, there is no evidence that Discover engaged in any tactics to coerce Plaintiffs into entering into the Cardmember Agreement. "Mere inequality in bargaining power ... is not enough by itself to overcome the federal policy favoring arbitration." See E.E.O.C. v. Woodmen of World Life Ins. Soc., 479 F.3d at 566 (citing Faber v. Menard, Inc., 367 F.3d 1048, 1053 (8th Cir. 2004)); see also Perez v. Discover Bank, No. 20-

11

CV-06896-SI, 2021 WL 4339139, at *5 (N.D. Cal. Sept. 23, 2021) (citing Graham v. State Farm Mut. Auto. Ins. Co., 565 A.2d 908, 912 (Del. 1989). "[M]ere disparity between the bargaining power of parties to a contract will not support a finding of unconscionability.").

Here, the arbitration agreements were not worded as "take it or leave it" adhesion contracts. And even if they were, that fact would not automatically deem them unenforceable. See Cicle, 583 F.3d at 555 ("Because the bulk of contracts signed in this country are form contracts—'a natural concomitant of our mass production-mass consumer society'—any rule automatically invalidating adhesion contracts would be 'completely unworkable.' "); see Ketler, 132 A.3d at 748 (noting that under Delaware law, a disparity in bargaining power is not enough to show unconscionability; instead, there must be an absence of meaningful choice—which cannot be shown if the party could walk away from the contract.)

Both Plaintiffs had the opportunity to opt out of the arbitration provisions and still be allowed to maintain a credit card account with Discover. Although Plaintiffs state that they do not recall seeing the agreements, they do not argue they were never received or suggest that they took any action to reject the Cardmember Agreements.

The arbitration agreements at issue here are not so procedurally unconscionable as to render them unenforceable.

b)    Substantive Unconscionability

"A contract is not substantively unconscionable unless the terms are grossly unfair under the circumstances that existed when the parties entered into the contract." Henggeler v. Brumbaugh & Quandahl, P.C., LLO, 894 F. Supp. 2d 1180,

12

1187 (D. Neb. 2012). Here, Plaintiffs assert the arbitration clauses are unconscionable because the terms are one-sided, arbitration is costly, and it forecloses their ability to pursue a class action for the benefit of others similarly situated.

The rules that Plaintiffs assert favor Discover actually apply equally under the agreement.[5] Both parties had the ability to elect to resolve any claim by arbitration. There are also specific provisions that would arguably favor the Plaintiffs (i.e. the ability to arbitrate in the judicial district where Plaintiffs reside, and Discover's agreement not to arbitrate any individual claim brought in small claims court).

Plaintiffs also argue that the arbitration agreement is unconscionable[6] because the arbitration rules could change. The agreement provides that "The rules for the arbitration will be those in this arbitration agreement and the procedures of the chosen arbitration organization" (the American Arbitration Association or JAMS). (Filing No. 39-1 at CM/ECF p. 44). Neither party has control over the rules of the arbitration, as the parties agreed to submit to the arbitration rules of the chosen organization.

---

[5]  Plaintiffs argue that Defendants "retain the right to go to court, but demand that the Schmitts arbitrate their claims." (Filing No. 43 at CM/ECF p. 33). The court disagrees. Defendants filed a collections action in county court, electing to resolve the issue of payment in court rather than through arbitration. This action was brought by Plaintiffs arguing that Defendants used collection tactics that violated federal (FDCPA) and Nebraska (NCPA) statutes enacted to protect the public. As to claims challenging Discover's collection methods, Discover requests arbitration. ("Any Claim . . . maybe resolved by binding arbitration if either side requests it." (Filing No. 39-1 at CM/ECF p. 44)).

  Although this case relates to the county court collections action, it is a separate action and there is nothing improper about Discover waiving arbitration in one case and requesting it in another. Further, even if Plaintiffs' claims were brought as part of the same county court action, either party could request arbitration of the later-filed claims under the agreement. ("Even if all parties have opted to litigate a Claim in court, you or we may elect arbitration with respect to any Claim made by a new party or any new Claims later asserted in that lawsuit." (Filing No. 39-1 at CM/ECF p. 44.)).

[6]  Plaintiffs argue that they would potentially be oppressed by the arbitration rules of the chosen arbitration organization. Although Plaintiff asserts this is procedurally unconscionable, the court will address it as a substantive unconscionability argument because it challenges the substantive fairness of the agreement's terms.

Plaintiffs assert that the agreement is unconscionable because "Arbitration will impose enormous and prohibitive costs upon the Plaintiffs and the class they seek to represent." (Filing No. 43 at CM/ECF p. 31). Plaintiffs have provided no specific evidence that the costs are prohibitive other than their respective generalized statements that arbitration will cost more than disposition in court and that the costs are "unaffordable for me." (Filing No. 44-1 at CM/ECF p. 3; Filing No. 44-2 at CM/ECF p.3). Plaintiffs bear the burden to show that individual arbitration is "prohibitively expensive, and that it is likely, as opposed to merely speculative, that prohibitive costs will be incurred." Torres v. Simpatico, Inc., 781 F.3d 963, 969 (8th Cir. 2015). They must present "specific evidence of likely arbitrator's fees and evidence of their own financial inability to pay those fees so that the court can determine whether the arbitral forum is accessible." (Id. (quoting Faber v. Menard, Inc., 367 F.3d at 1051 (8th Cir. 2004)); see also Green Tree Financial, 531 U.S. at 91. When the party opposing arbitration does not meet this burden, the district court must honor the arbitration agreement and compel arbitration. Id.

The agreement provides additional benefits to the cardmember to offset the costs of arbitration, further undercutting Plaintiffs' argument that the process is too costly, and that the terms are grossly unfair. (See Filing No. 39-1 at CM/ECF p. 45) ("If you wish to begin arbitration against us but you cannot afford to pay the organization's or arbitrator's costs, we will advance those costs if you ask us in writing."). The agreement also provides that if the cardmembers are successful in arbitration, Discover would not seek reimbursement of the costs, and the cardmember could potentially be awarded their attorney fees and costs by the arbitrator. There is no showing that the costs of arbitration render the agreement substantively unconscionable.

Plaintiffs also assert that it is unfair to deny them and others the remedies available to consumers as part of a class action lawsuit. Plaintiffs argue that the loss of a class action remedy is an "extreme blow to consumer rights" as the class action offers individuals with small claims their only realistic opportunity to receive justice. (Filing No. 43 at CM/ECF p. 34-35). The Supreme Court has enforced class waivers in arbitration agreements even when federal statutes at issue expressly permit collective actions, explaining the switch from bilateral to class arbitration "sacrifices the principal advantage of arbitration – its informality – and makes the process slower, more costly, and more likely to generate procedural morass than final judgment." Am. Exp. Co. v. Italian Colors Rest., 570 U.S. 228, 238, (2013). The Court specifically rejected the argument that class arbitration was necessary to prosecute claims "that might otherwise slip through the legal system." Id. (citing AT&T Mobility LLC v. Concepcion, 563 U.S. 333 (2011)). The Eighth Circuit has found that a class action waiver is not substantively unconscionable where, as here, the arbitration clause does not limit Plaintiffs' individual remedies. Pleasants v. American Exp. Co, 541 F.3d 853 at 858 (8th Cir. 2008).

Considering all of the above, the arbitration agreement between Plaintiffs and Discover, including the class action waiver, is not substantively unconscionable.

B.    RS Defendants

The RS Defendants have joined Discover's motion to compel arbitration. The arbitration agreement at issue provides for arbitration of disputes between the cardholder and Discover and its co-defendants for claims subject to the arbitration provision. Specifically, it provides:

**Other Beneficiaries of this Provision**. In addition to you and us, the rights and duties described in this arbitration agreement apply to: our Affiliates and our and their officers, directors and employees; any third party co-defendant of a claim subject to this arbitration provision; and all joint Accountholders and Authorized Users of your Account(s).

(Filing No. 39-1 at CM/ECF p. 45).

Under the language of this clause, even though the RS Defendants are not parties to the credit terms between Discover and the plaintiffs, as a co-defendant with Discover, they can assert a right to arbitrate any claims Plaintiffs have filed against them which are within the scope of the arbitration agreement. See Gartly v. Selip & Stylianou LLP, No. 118CV1806ARRVMS, 2018 WL 5777033, at *5 (E.D.N.Y. Nov. 2, 2018) (holding law firm which represented Discover in credit card debt collection cases was a third party entitled to enforce the inurement clause of the arbitration provisions within the Discover Cardmember agreement); Passmore v. Discover Bank, No. 1:11-CV-01347, 2011 WL 5086431, at *1 (N.D. Ohio Oct. 26, 2011) (same); O'Fallon v. Encore Receivable Mgmt., Inc., 831 F. Supp. 2d 957, 966 (S.D. Miss. 2011), aff'd, 466 F. App'x 325 (5th Cir. 2012) (same); Balezos v. Cavalry Portfolio Serv., LLC, No. CV-06-1952-PHX-SMM, 2007 WL 2752383, at *1 (D. Ariz. Sept. 21, 2007) (same).

II.     Scope of Claims Subject to Arbitration

Having found that there is a valid agreement to arbitrate, the court must consider whether Plaintiffs' claim fall within the scope of the arbitration clause. In resolving this issue, the first question is "whether the arbitration clause is broad or narrow." Parm v. Bluestem Brands, Inc., 898 F.3d 869, 874 (8th Cir. 2018) "If the clause is broad, the liberal federal policy favoring arbitration agreements requires

16

that a district court send a claim to arbitration ... as long as the underlying factual allegations simply touch matters covered by the arbitration provision." Id.

Here, the Arbitration section of the Cardmember Agreement provides that when a dispute between Discover and the cardholder, "aris[es] out of or relat[es] to this Account or the relationships resulting from this Account" or any other dispute between Discover and the cardholder, either Discover or the cardholder may choose to resolve the claim by binding arbitration instead of court litigation. (Filing No. 39-1 at CM/ECF p. 44). Arbitration clauses covering claims "arising out of" or "relating to" an agreement are considered broad. Zetor N. Am., Inc. v. Rozeboom, 861 F.3d 807, 810 (8th Cir. 2017). And since Plaintiffs' claims relate solely to how Discover, and others, sought to collect the amounts Plaintiffs allegedly owed under their credit card accounts, the claims are undoubtedly covered by the broadly worded arbitration agreement.

Plaintiffs assert that their request for injunctive relief precludes this court's ability to compel arbitration. Specifically, Plaintiffs argue that their claims are equitable in nature and "any attempt to arbitrate injunctive relief under this statute usurps its intent to the detriment of the consumer." (Filing No. 43 at CM/ECF p. 20) In support of their argument, Plaintiffs cite to Broughton v. Cigna Healthplans of California, 21 Cal. 4th 1066, 1077 (Cal. 1999), for the proposition that arbitration is not appropriate for an action involving a "public injunction." (Filing No. 43 at CM/ECF p. 20) ("when the plaintiff is acting authentically as a private attorney general, such a remedy may be inherently incompatible with arbitration." Id. at 1077).

As previously stated, the class action waiver is not unconscionable, and the arbitration agreement is valid. As such, Broughton is inapplicable because under the terms of the credit agreement between Plaintiffs and Discover, Plaintiffs cannot

represent a class. To the extent Plaintiffs seek injunctive relief on their own behalf, injunctive relief is expressly allowed by the agreement. ("The arbitrator may award injunctive relief only in favor of the individual party seeking relief and only to the extent necessary to provide relief warranted by that party's individual claim." (Filing No. 39-1 at CM/ECF p. 44).) Therefore, Plaintiffs' request for injunctive relief has no bearing on whether this court can compel arbitration on claims that fall within the scope of the agreement.

The court finds that Plaintiffs' claims against Discover and the RS Defendants, including both legal and equitable remedies arising from those claims, are within the scope of the arbitration clause in the Cardmember agreements and are subject to arbitration. See Gartly, supra., (holding lawsuit seeking relief against Discover and its attorneys for alleged misdeeds in the attempted collection of a credit card debt was a dispute arising from the credit account and within the scope of the arbitration clause); Johnson v. Discover Bank, No. 17-CV-412-JDP, 2018 WL 840160, at *3 (W.D. Wis. Feb. 12, 2018) (holding a Fair Credit Reporting Act (FCRA) claim was a dispute between a cardholder and Discover "arising under or relating to" the account and therefore subject to arbitration); Comrey v. Discover Fin. Servs., Inc., 806 F. Supp. 2d 778, 780 (M.D. Pa. 2011) (same); Passmore, supra (holding FDCPA and Ohio Consumer Protection Act claims against Discover and its law firm were disputes "arising from or relating to" a Discover credit card account and was therefore subject to arbitration); O'Fallon, 831 F. Supp. 2d 957 (holding cardholder's FDCPA claims against the debt collector for Discover was a claim arising from the credit card account and was within the scope of the Cardmember Agreement's arbitration clause); Balezos v. Cavalry Portfolio Servs., LLC, No. CV 06-1952-PHXSMM, 2007 WL 2330861, at *1 (D. Ariz. Aug. 15, 2007) (holding action against Discover's law firm for violations of the FDCPA arose out of the credit card account and was subject to arbitration).

III.    Defenses to Arbitration

A.    Waiver

Plaintiffs assert that Defendants waived the right to arbitration through affirmative acts or acts inconsistent with the desire to arbitrate. In evaluating whether a party waived its right to arbitrate, courts must consider whether a party "(1) knew of an existing right to arbitrate, (2) acted inconsistently with that right, and (3) prejudiced the other party by those inconsistent acts." Lewallen v. Green Tree Servicing, LLC., 487 F.3d 1085, 1090 (8th Cir. 2007).

a)  Discover

Plaintiffs assert Discover waived its right to arbitrate by bringing collection actions against Plaintiffs in county court. However, under the terms of the arbitration clause, the right to arbitrate is determined on a per claim basis. A claim is defined as "a dispute between you and us arising out of or relating to this Account or the relationships resulting from this Account or any other dispute between you or us." (Filing No. 39-1 at CM/ECF p. 44). The arbitration provisions further state that "[e]ven if all parties have opted to litigate a Claim in court, you or we may elect arbitration with respect to any Claim made by a new party or any new Claims later asserted in that lawsuit." (Filing No. 39-1 at CM/ECF p. 45).

By filing county court collection actions, Discover did not seek to arbitrate the payment of money allegedly owed to it. However, by filing a motion to arbitrate the litigation in this forum, Discover has unequivocally elected to arbitrate Plaintiffs' claims alleging Discover violated the NCPA in seeking repayment of Plaintiffs' debts. The county court action and this action are separate and distinct, and waiver in one case is not automatically deemed a waiver in the other.

19

By pursuing a state court action to collect amounts owed, Discover has not acted inconsistently with its right to arbitrate claims raised in this case. Plaintiffs have not been prejudiced by Discover's request to elect arbitration, and Discover has not waived it right to arbitrate Plaintiffs' claim against it.[7]

   b) RS Defendants

Plaintiffs argue that the RS Defendants waived any right to arbitration by filing answers and affirmative defenses in response to the original and amended complaints in this case. Plaintiffs also argue "RS Defendants waited over eight months while this case progressed and additional time and costs were incurred before finally joining in Discover's Motion to Compel Arbitration." (Filing No. 43 at CM/ECF p. 16). This is a misstatement of the facts. When the RS Defendants filed an answer to the original complaint, Discover was not yet a party. And since the RS Defendants' arbitration rights are derived from their status as co-defendants with Discover, the RS Defendants could not assert a right to arbitrate until Discover was added as a named defendant.

The second amended complaint was filed on April 16, 2021 and the RS Defendants' answer was due in May 2021, before Discover was served.[8] The record shows that after Discover filed the instant motion to compel arbitration, the

---

[7] As additional support, Plaintiffs argue this case is analogous to Barnett v. Am. Express Nat'l Bank, No. 3:20-CV-623-HTW-LGI, 2021 WL 4188051 (S.D. Miss. Sept. 14, 2021), where the court found Defendants waived arbitration. In that case, Barnett had repeatedly invoked the arbitration agreement, in writing, prior to the filing of any court action and American Express did not respond to her requests. Then, after court actions were filed, American Express attempted to invoke the arbitration agreement. This case is clearly distinguishable, as there is no evidence that Plaintiffs ever contacted Discover regarding the arbitration agreement and no evidence that Discover engaged in action or inaction similar to American Express.

[8] On May 10, 2021, Plaintiffs filed a summons return which had purportedly been executed upon Discover. (Filing No. 22). On May 13, 2021 Plaintiffs filed a letter indicating that the entity served was not a registered agent for Discover. (Filing No. 24). Plaintiffs filed a Waiver of Service executed upon Discover on June 3, 2021, giving Discover 60 days, until August 2, 2021, to file an answer or other responsive pleading. (Filing No. 36).

RS defendants filed their notice of joining the motion within three days. (See Filing No. 37, Filing No. 42). Under the forgoing timeline of facts and filings, Plaintiffs cannot validly assert that the RS Defendants, by unnecessary delay, waived their right to arbitration.

Plaintiffs rely upon Hooper v. Advance Am. Cash Advance Centers of Missouri, Inc., 589 F.3d 917 (8th Cir. 2009), to argue the RS Defendants waived arbitration through inconsistent action. In Hooper, the defendant knew of its existing right to arbitration, acted inconsistently with that right by filing an extensive motion to dismiss the case on the merits, and prejudiced the plaintiff through those inconsistent actions. No such evidence or action by the RS defendants is present in this action. Additionally, the Eighth Circuit in Hooper found that compelling arbitration would presumably require duplication of effort as Defendant would reargue issues the district court had already addressed in its motion to dismiss the case on the merits. This court has not ruled on any substantive issues at this stage. So, Hooper is distinguishable.

For the reasons explained above, the court finds that neither Discover nor the RS Defendants waived their right to arbitration.

B.      Unnecessary Burden and Expense

Plaintiffs argue arbitration should be denied because it will cause a "logistical case management nightmare." (Filing No. 43 at CM/ECF p. 23). Premised on Plaintiffs' claim that the RS Defendants waived any right to arbitration, Plaintiffs argue that efforts and expenses will be duplicated if the claims against Discover are arbitrated while the claims against the RS Defendants are separately litigated in federal court. (Filing No. 43 at CM/ECF p. 23). Plaintiffs argue an order of

arbitration is improper since it will increase the burden and expense of this litigation. The argument fails for two reasons.

First, the RS Defendants did not waive their right to arbitrate. All claims against all defendants arise from the Plaintiffs' Discover Card accounts, and all defendants have the right to arbitration under the terms of the Cardmember Agreements; Discover under the express terms of its contract with Plaintiffs, and the RS Defendants as co-defendants with Discover pursuant to the inurement clause of the arbitration provisions. So, the parties will not be faced with the burden of litigating in two forums because the entire case will be ordered to arbitration.

Second, and most importantly, the Supreme Court has rejected any claim that alleged unreasonable burden and expense is a basis for not enforcing an arbitration agreement. In Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213 (1985), the Court held that the FAA requires district courts to compel arbitration of pendent arbitrable claims when one of the parties files a motion to compel, "even where the result would be the possibly inefficient maintenance of separate proceedings in different forums." Id. at 218; see also KPMG LLC v. Cocchi, 565 U.S. 18 at 19 (2011) ("The [FAA] has been interpreted to require that if a dispute presents multiple claims, some arbitrable and some not, the former must be sent to arbitration even if this will lead to piecemeal litigation.") The alleged burden of advocating in two forums is not a valid basis for denying the right to arbitrate a dispute.

## CONCLUSION

The arbitration provisions in the Discover cardmember agreement are enforceable, and Plaintiffs' claims for recovery against Discover and the RS Defendants are within the scope those arbitration provisions. Neither Discover nor

the RS Defendants have waived their right to arbitration. Therefore, as required under the FAA, the defendants' motion to compel arbitration will be granted.

Accordingly,

IT IS ORDERED: [i]

1) Discover's motion to compel arbitration is granted. (Filing No. 37).

2) The RS Defendants' request to join arbitration is granted and Plaintiffs' claims against the RS Defendants will be submitted to arbitration.

3) Plaintiffs' dispute shall be promptly submitted to binding arbitration in accordance with the arbitration clauses quoted and discussed in this opinion.

4) This action is stayed pending arbitration. Every 90 days from the date of this order, counsel shall file a joint status report with the court regarding the progress of the arbitration proceedings.

5) The clerk shall administratively close this case and set a January 15, 2022 case management deadline.

Dated this 15th day of October, 2021.

BY THE COURT:

*s/ Cheryl R. Zwart*
United States Magistrate Judge

---

[i] There is a split of authority on the issue, but adopting the majority view, judges within the District of Nebraska have held that motions to arbitrate are non-dispositive and can be ruled on by a magistrate judge. Wojtalewicz v. Pioneer Hi-Bred Int'l, Inc., 944 F. Supp. 2d 715, 721 (D. Neb. 2013) (Urbom, J.)(holding a magistrate judge may enter a memorandum and order on defendant's motions to compel arbitration because such motions are not analogous to any of the "excepted" motions listed in 28 U.S.C. § 636(b)(1)(A), and they are "nondispositive" for the purposes of Federal Rule of Civil Procedure 72); Credit Suisse Sec., (USA) LLC v. Hilliard, No. 8:07CV17-LSC-FG3, 2007 WL 2137824, at *2 (D. Neb. July 23, 2007) (Smith Camp, J.) ("I view the Defendants' motion to compel arbitration as a pretrial matter not dispositive of a claim or defense, and, therefore, Judge Gossett's order granting the motion will be modified or set aside only if clearly erroneous or contrary to law."); Schreiner v. Credit Advisors, Inc., No. 8:07CV78-JFB-TDT, 2007 WL 2904098, at *12 n. 5 (D. Neb. Oct. 2, 2007) (Thalken, M.J.) (noting that since the parties must return to

23

the district court to have an arbitration award confirmed, modified or vacated under 9 U.S.C. §§ 9–11, an order to stay proceedings and compel arbitration is non-dispositive and can be ruled on by a magistrate judge); see also Patton v. Johnson, 915 F.3d 827, 832 (1st Cir. 2019) (a motion to compel arbitration is a non-dispositive motion and is properly decided with a ruling by the magistrate judge, not a report and recommendation); (Virgin Islands Water & Power Auth. v. Gen. Elec. Int'l Inc., 561 F. App'x 131, 134 (3d Cir. 2014) (holding that motions to compel arbitration are non-dispositive, and the District Court erred in finding Magistrate Judges lack the authority to rule on such motions); PowerShare, Inc. v. Syntel, Inc., 597 F.3d 10, 14 (1st Cir. 2010) (collecting cases and holding motions to stay litigation and compel arbitration are non-dispositive motions, properly ruled on by a magistrate judge, and subject to a "clearly erroneous or contrary to law" standard of review)).